UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

VICTOR DE LOS SANTOS,　　　　)
　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　)　　　CIVIL ACTION NO.
VS.　　　　　　　　　　　　)
　　　　　　　　　　　　　　)　　　3:14-CV-3086-G
KROGER TEXAS, LP d/b/a KROGER　)
#577, ET AL.,　　　　　　　　)
　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　)

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, Kroger Texas L.P. and The

Kroger Company (collectively, "defendants" or "Kroger") for summary judgment

(docket entry 10).  For the reasons discussed below, the motion is granted.

I.  BACKGROUND

A.  Factual Background

This case concerns a slip-and-fall that occurred on September 5, 2012 at a

Kroger store located at 7505 North MacArthur Boulevard, Irving, Texas ("the

premises").  Brief in Support of Plaintiff's Response to Motion to Dismiss for

Summary Judgment ("Plaintiff's Supporting Brief") ¶ 7 (docket entry 22).  The

plaintiff, Victor De Los Santos ("De Los Santos"), entered the premises around 8:20 a.m. and proceeded to the produce section.  Appendix for Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Appendix") (docket entry 23), Exhibit A, Affidavit of Victor De Los Santos ("DLS Affidavit") at App. 2, ¶¶ 2-3. When walking down the main aisle in the front of the store, De Los Santos slipped on a puddle of water, forcibly struck the ground, and temporarily lost consciousness. *Id.* ¶ 3.

Upon regaining consciousness, De Los Santos awoke in the puddle of water. *Id.*  He noticed surveillance cameras directly above him and near the area of his fall. *Id.*  Co-manager Barbara Porter ("Porter"), one of the first employees to the scene, requested that De Los Santos sit in a chair and then instructed an employee to immediately clean up the area.  *Id.* at App. 3, ¶ 4.  After mopping the area, the employee also set up a warning sign.  *Id.*  Prior to De Los Santos's fall, however, no signs or other warnings notified store patrons of the puddle.  *Id.* at App. 4, ¶ 8.

Following the incident, De Los Santos spoke with Porter.  *Id.* at App. 3, ¶ 4. Porter instructed De Los Santos to seek medical treatment at Baylor Hospital, which Porter claimed Kroger would pay for.  *Id.*  Thus, De Los Santos was surprised to learn during a call to Kroger's claims adjuster on the same or the following day that Kroger was not going to pay for his medical expenses.  *Id.* ¶ 5.  To this date, De Los Santos

has incurred medical bills totaling $15,688.61 for the permanent injuries he suffered. *Id.* ¶¶ 6-8.

Consistent with company policy, Porter prepared a customer incident report (the "report") and a supplemental incident report (the "supplemental report") the day of the accident.  Plaintiff's Appendix, Exhibit H, Report at App. 66-67 (noting that the report must be "filled out by Store Management and called in within 24 hours"); Plaintiff's Appendix, Exhibit I, Supplemental Report at App. 69.  Both reports were "being prepared in anticipation of litigation . . .."  *See* Report; Supplemental Report. According to the supplemental report, one hour preceding the incident was the last time a Kroger employee inspected the area where De Los Santos fell.  Supplemental Report at App. 69.  Moreover, the supplemental report requires a Kroger employee to "[t]ake photographs of the exact area where the customer allegedly fell" and mandates that "[a]ll employees named on th[e supplemental] report [must] complete a witness statement."  *Id.*

Despite these instructions, Porter did not take any photographs of the area. Plaintiff's Appendix, Exhibit B, Excerpts of Deposition of Barbara Porter ("Porter Deposition") at App. 31.  Similarly, despite being named on the supplemental report, neither the employee who reported the incident, Amanda, nor any deli employee completed a witness statement.  *See* Supplemental Report at App. 69; Report at App. 66; Porter Deposition at App. 32-33.  Footage from surveillance cameras positioned

near where De Los Santos fell is also missing.  Plaintiff's Appendix, Exhibit G,

Defendants' Response to Plaintiff's Request for Production at App. 64.

On October 2, 2012, De Los Santos's newly retained attorney sent a letter to

Kroger's insurance carrier informing it that De Los Santos had secured counsel to

pursue his rights arising from the incident.  Plaintiff's Appendix, Exhibit A-1, De Los

Santos's Letter dated October 2, 2012 at App. 7.  Kroger's insurance carrier

responded on October 26, 2012 that it had completed an investigation and denied

liability.  Plaintiff's Appendix, Exhibit A-4, Kroger's Letter dated October 26, 2012 at

App. 13.  Despite this denial, on December 14, 2012 De Los Santos sent a formal

demand to Kroger's insurance carrier requesting $64,000 in exchange for a release

and settlement of De Los Santos's bodily injury claim.  Plaintiff's Appendix, Exhibit

A-5, De Los Santos's Letter dated December 14, 2012 at App. 15.  After failing to

receive an acceptable response, De Los Santos ultimately filed this suit against Kroger

on July 24, 2014.  Plaintiff's Supporting Brief ¶ 21.

## B.  Procedural Background

De Los Santos filed his original petition in the 68th Judicial District Court,

Dallas County, Texas on July 24, 2014.  Index of Attachments to Notice of Removal

("Removal Index") (docket entry 4), Exhibit 2(a), Plaintiff's Original Petition and

Request for Disclosure ("Petition").  Kroger filed an answer on August 15, 2014.

Removal Index, Exhibit 2(b), Defendants' Original Answer.  Then Kroger removed

the action to this court on August 27, 2014[1] (docket entry 1) and filed a motion for

summary judgment (docket entry 10).  De Los Santos filed a timely response (docket

entry 21), to which Kroger served a timely reply (docket entry 24).  The motion is

now ripe for consideration.

## II.  ANALYSIS

### A.  Legal Principles

#### 1.  *Summary Judgment Standard*

Summary judgment is proper when the pleadings, depositions, admissions,

disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a), (c)(1).  A fact is material if the governing substantive law

identifies it as having the potential to affect the outcome of the suit.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481,

489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to

merely formal, pretended, or a sham.").

---

[1]    Kroger amended its notice of removal on September 2, 2014 (docket
entry 4) after realizing that its initial notice of removal contained incorrect state court
pleadings.

The moving party need not actively negate the opponent's claim. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). The moving party simply must point out an absence of evidence to support the nonmoving party's claim. *Id.* at 325.

At this stage, the court does not weigh the evidence or make credibility determinations; rather, the court merely determines if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 255. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. "'[E]ven in cases where elusive concepts such as motive or intent are at issue,'" summary judgment may be appropriate "'if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)), *cert. denied*, 513 U.S. 871 (1994).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, the court will only resolve factual controversies in favor of the nonmoving party "when an actual

- 6 -

controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Moreover, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts and "articulate the 'precise manner' in which that evidence support[s] [his] claim." *Celotex*, 477 U.S. at 324; *Forsyth*, 19 F.3d at 1537 (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992)). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### 2. *Spoliation of Evidence*

Spoliation is the "destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ashton v. Knight Transportation, Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (Boyle, J.) (citations omitted). Considered an abuse of the judicial process, spoliation "may significantly hamper the nonspoliating party's ability to present its claims . . . and can undermine the truth-seeking function of the judicial

system and the adjudicatory process." *Castano v. Wal-Mart Stores Texas, LLC*, No. H-14-1450, 2015 WL 2180573, at *2 (S.D. Tex. May 7, 2015) (quoting *Brookshire Brothers, Limited v. Aldridge*, 438 S.W.3d 9, 16-17 (Tex. 2014)) (internal quotation marks omitted).  Frequently, the missing evidence is irreplaceable because "[t]estimony as to what the lost or destroyed evidence might have shown" often will not "restore the nonspoliating party to an approximation of its position if the evidence were available." *Aldridge*, 438 S.W.3d at 17.

"A federal court has the inherent power to sanction a party who has abused the judicial process." *Ashton*, 772 F. Supp. 2d at 799 (citing *Chambers v. NASCO*, 501 U.S. 32, 44 (1991)).  In a diversity suit, federal law guides any application of this inherent power.  *Id.* at 800 (citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)).  A court possesses discretion to sanction a party for spoliation when that party (1) possessed a duty to preserve the information, (2) culpably breached that duty, and (3) prejudiced the innocent party as a result.  *Id.* (citations omitted).  The party seeking the spoliation sanction bears the burden of proof. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010).

A duty to preserve -- the first element necessary for a spoliation sanction -- arises when a party "has notice that the evidence is relevant to litigation . . . or should have known that the evidence may be relevant to future litigation." *Castano*, 2015

WL 2180573, at *2 (quoting *Rimkus*, 688 F. Supp. 2d at 612) (internal quotation marks omitted).  However, a court can only sanction a culpable breach of this duty.

In the Fifth Circuit, a spoliation sanction, such as granting an adverse inference instruction,[2] requires the moving party to demonstrate the spoliator's "bad faith." *Rimkus*, 688 F. Supp. 2d. at 614 (citations omitted).  "Bad faith" involves a "fraudulent intent and a desire to suppress the truth."  *Ashton*, 772 F. Supp. 2d at 800 (quoting *Consolidated Aluminum Corporation v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006)).  For example, in *Ashton*, *id.* at 796, a truck driver's immediate replacement of tires following an accident and the absence of communication records for the time surrounding the accident provided the court with sufficient circumstantial evidence to establish the "bad faith" requirement.  Conversely, in *Castano*, 2015 WL 2180573, at *3, the court concluded that a company's failure to take photos of and preserve evidence from the scene (*e.g.*, retain paper towels used to wipe up the spill), albeit in violation of store policy, did not demonstrate "bad faith."

---

[2]      If a court concludes an adverse inference instruction is warranted, then it can deny summary judgment because the adverse inference provides a genuine issue of material fact for a jury to consider.  See *Molzberger v. HWCC-Tunica, Inc.*, No. Civ. A. 2:02-CV-317-JAD, 2005 WL 1660451, at *3 (N.D. Miss. July 8, 2005) ("Since the plaintiff has the burden of proof, and *intended to meet her burden by relying on an adverse inference* arising from spoliation of these records, it was incumbent upon the plaintiff to develop at least some proof of the defendant's intentional and bad faith destruction of the records.") (emphasis added); see also *Aguirre v. South Texas Blood & Tissue Center*, 2 S.W.3d 454, 457 (Tex. App.--San Antonio 1999, pet. denied) (indicating that under Texas law an adverse inference presumption resulting from a party's spoliation of evidence can preclude summary judgment).

Such actions were as consistent with negligence as with a culpable "bad faith" intent. See *id.* at *3. Because "'[m]ere negligence is not enough' to warrant an instruction on spoliation," *Rimkus*, 688 F. Supp. 2d at 614 (quoting *Russell v. University of Texas of Permian Basin*, 234 Fed. Appx. 195, 208 (5th Cir. 2007)), the court concluded that the plaintiff had "not provided any evidence that the court could construe as indicative of bad faith." *Castano*, 2015 WL 2180573, at *3.

Finally, spoliation prejudices the innocent party when the missing evidence is relevant to the innocent party's case and weakens that party's ability to support its claims or defenses. *Ashton*, 772 F. Supp. 2d. at 801 (citations omitted); *Castano*, 2015 WL 2180573 at *2.

3. *Premises Liability*

Both parties agree that De Los Santos qualifies as Kroger's invitee. Petition ¶ 10; Defendants' Brief in Support of Their Motion for Summary Judgment at 5 (docket entry 11). Under Texas law, the duty an owner owes to an invitee "'is to exercise reasonable care to protect against danger from a condition . . . that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover.'" *Castano*, 2015 WL 2180573, at *2 (quoting *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000)).

To recover damages in a slip-and-fall case, the plaintiff must demonstrate:

(1)     Actual or constructive knowledge of some
        condition on the premises by the
        owner/operator;

(2)     That the condition posed an unreasonable
        risk of harm;

(3)     That the owner/operator did not exercise
        reasonable care to reduce or eliminate the
        risk; and

(4)     That the owner/operator's failure to use such
        care proximately caused the plaintiff's
        injuries.

*Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998) (citations

omitted).

A plaintiff can satisfy the first element by demonstrating either the defendant's

actual or constructive knowledge.[3]  *Id.*  To establish actual knowledge, the plaintiff

must prove either that "the defendant placed the substance on the floor" or that "the

defendant actually knew that the substance was on the floor."  *Wal-Mart Stores, Inc. v.

Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (citations omitted).  Either direct or

circumstantial evidence can establish a defendant's actual knowledge.  See *University

of Texas at El Paso v. Muro*, 341 S.W.3d 1, 5 (Tex. App.--El Paso 2009, no pet.).

---

[3]      "'This rule, while harsh and demanding on plaintiffs, is nevertheless well
established and plaintiffs must always discharge the burden of proving that the
dangerous condition was either known to the defendant or had existed for such a
length of time that he should have known it.'"  *Gonzalez*, 968 S.W.2d at 938 (quoting
*Henderson v. Pipkin Grocery Company*, 268 S.W.2d 703, 705 (Tex. Civ. App.--El Paso
1954, writ dism'd w.o.j.).

However, when a party relies on "circumstantial evidence [that] presents two equally plausible, but opposite inferences, neither can be inferred." *Id.* (citations omitted). In such a situation, the circumstantial evidence is "legally no evidence at all." *Id.* (citation omitted); see also *Gonzalez*, 968 S.W.2d at 936 ("However, meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding.") (citations omitted).

Constructive knowledge follows from a plaintiff's showing "that it is more likely than not that" a substance was on the floor "long enough to give the premises owner a reasonable opportunity to discover it." *Reece*, 81 S.W.3d at 814; *Daenen*, 15 S.W.3d at 201-03; *Gonzalez*, 968 S.W. 2d at 936. Under Texas law, this showing requires a plaintiff to present evidence of how long the condition existed prior to his fall; absent such evidence, the defendant is entitled to summary judgment. See *Gonzalez*, 968 S.W.2d at 936-38 (rendering judgment in favor of a retailer when the customer could not prove the macaroni on which she fell had been on the floor long enough that the retailer reasonably should have discovered it); *Richardson v. Wal-Mart Stores, Inc.*, 963 S.W.2d 162, 166 (Tex. App.--Texarkana 1998, no pet.) ("Absent evidence of the length of time that the substance has been on the floor, there can be no inference that any increased level of inspecting or cleaning by [the company] would have discovered and remedied the condition.") (citation omitted).

- 12 -

B.  <u>Application</u>

After first addressing De Los Santos's evidentiary objections, the court will analyze whether Kroger's alleged spoliation of evidence entitles De Los Santos to an adverse inference instruction.  Then the court will determine whether De Los Santos has established a genuine issue of material fact regarding Kroger's knowledge of the dangerous condition on the floor.

1. *Evidentiary Objections*

In a motion to strike, De Los Santos raises two objections to Kroger's evidence in support of its motion for summary judgment.  First, De Los Santos objects to Kroger's use of his responses to interrogatories because the answers do not comply with Federal Rule of Civil Procedure 33(b).  Plaintiff's Supporting Brief ¶¶ 1-3. Second, De Los Santos objects to Kroger's use of portions of his deposition testimony that allegedly contain unsupported speculation, which is not competent summary judgment evidence.  *Id.* ¶¶ 4-6.  Because the court did not consider any of this evidence in reaching its conclusions below, these objections are overruled and the motion to strike is denied as moot.  See *Continental Casualty Company v. St. Paul Fire & Marine Insurance Company*, Civil Action No. 3:04-CV-1866-D, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence not relied on by the court in reaching its summary judgment decision).

2.   *De Los Santos has Failed to Prove that Kroger Spoliated Evidence*

De Los Santos argues that Kroger spoliated evidence by failing to preserve video surveillance, failing to photograph the area of the incident, and failing to take witness statements in accordance with store policy.  *See* Plaintiff's Supporting Brief ¶ 38.  Even if it is assumed that Kroger had a duty to preserve this evidence,[4] De Los Santos -- much like the store patron in *Castano* -- has presented no evidence that Kroger's failure to take pictures, create witness statements, or preserve video surveillance was made in "bad faith."[5]  Thus, the court concludes that De Los Santos has not satisfied his burden of demonstrating that Kroger spoliated evidence.

─────────────────────

[4]      If relevant video surveillance existed, then Kroger undoubtedly had a duty to preserve such surveillance.  *But see* Defendants' Reply Brief in Support of Their Motion for Summary Judgment at 6 ("[T]he area where Plaintiff allegedly fell is not visible on camera, thus even if a video was preserved, the parties would be unable to determine when and/or how the foreign substance came to be on the ground, or when the area was last inspected.").  However, Kroger likely did not have a duty to take photos and witness statements because the duty to preserve evidence does not include the duty to *create* evidence.  See *Bertrand v. Fischer*, No. 09-0076, 2011 WL 6254091, at *4 (W.D. La. Dec. 14, 2011).  Since the duty to preserve evidence implies a duty not to alter or destroy *existing* evidence, "spoliation does not encompass a defendant's failure to photograph an accident site . . ..  Thus, the absence of after-the-fact photographs . . . cannot support [a] spoliation claim." *Id.* (applying Louisiana law).

[5]      By itself, an employee's failure to abide by store policy does not demonstrate "bad faith."  As indicated in *Castano*, 2015 WL 2180573, at *3, an employee's violation of store policy is equally consistent with negligent haste as with "bad faith."  De Los Santos's lack of evidence regarding Kroger's "bad faith" may partially result from an incorrect belief that Texas spoliation law, which extends to both negligent and intentional acts, governs the present dispute.  Plaintiff's Supporting Brief ¶¶ 27-29.

3.   *De Los Santos Fails to Establish a Genuine Issue of Material Fact Regarding His Premises Liability Claim*

De Los Santos fails to demonstrate that Kroger had actual knowledge of the water on the floor.  Lacking any direct evidence, De Los Santos relies on circumstantial evidence in an attempt to establish actual knowledge.  *See* Plaintiff's Supporting Brief ¶¶ 53-60.  However, Porter's behavior following the incident -- De Los Santos's primary circumstantial evidence -- supports "two equally plausible, but opposite inferences."  *University of Texas at El Paso*, 341 S.W.3d at 5 (citations omitted).  Porter either quickly sought to remedy the situation and in her haste accidentally violated company policy, or knowingly violated company policy to conceal Kroger's actual knowledge of the puddle.  This "meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient" to establish Kroger's actual knowledge. *Gonzalez*, 968 S.W.2d at 936.

To prove constructive knowledge, De Los Santos first has to demonstrate that the water existed on the floor for a length of time such that Kroger would have discovered it upon reasonable inspection.  *Reece*, 81 S.W.3d at 816 ("Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition.").  However, De Los Santos has presented no evidence indicating how long the water

was on the floor and thus has failed to establish Kroger's constructive knowledge. See, *e.g.*, *Gonzalez*, 968 S.W.2d at 936-38; *Richardson*, 963 S.W.2d at 166.

Finally, the court's analysis above prevents an adverse inference instruction from establishing a genuine issue of material fact with regard to the knowledge requirement. Because De Los Santos has not established a genuine issue of material fact regarding the knowledge element -- an essential element of his premises liability claim -- summary judgment for Kroger is proper.

III.  CONCLUSION

For the reasons set forth above, Kroger's motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendants.

**SO ORDERED**.

June 3, 2015.

A. JOE FISH
**Senior United States District Judge**

- 16 -